IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TONIA MATTHIAS, Individually and as
Next Friend to MASON JONES                                                                    PLAINTIFF

v.                                          No. 4:11-cv-00651 BRW

BRYANT SCHOOL DISTRICT, a Public Body Corporate;                         DEFENDANTS
RANDY RUTHERFORD, in his Individual and Official
Capacity as Superintendent of the Bryant School District;
SANDRA PORTER; RHONDA SANDERS; JOE
WISHARD; DAVID MOORE; and SCOTT HART, in their
Individual and Official Capacity as a Members of the Board
of Education for the Bryant School District

## ORDER

Pending is Defendants' Motion for Summary Judgment (Doc. No. 10). Plaintiff has responded,[1] and Defendant has replied.[2] For the reasons set out below, Defendants' Motion is GRANTED in part and DENIED in part.

I.   BACKGROUND

This case involves alleged racial harassment at the Bryant High School in the Bryant, Arkansas, School District.[3] Caucasian students make up about 80% of the student population in the Bryant School District.[4] African American students account for about 10% of the student body; bi-racial students for about .73%; and a combination of Hispanic, Asian/Pacific Islander, Asian, Native American/Alaska Native, and Hawaiian/Pacific Islander make up the remainder of

---

[1]Doc. Nos. 15, 16.

[2]Doc. No. 17.

[3]Doc. Nos. 12, 16.

[4]Doc. No. 16, Ex. B.

1

the student population.[5]  Plaintiff Tonia Matthais's son, Mason Jones, is a bi-racial[6] minor who is in the tenth grade at Bryant High School.  For years, Mason allegedly was subjected to racial slurs and race-based hostility from both school faculty and students.[7]  Mason stated that when he was in the seventh or eighth grade, Coach Grady told him to get his "cotton-picking hands" off of a bag of fries.[8]  Mason contends that when he was in the eighth grade, all African American football players were once required by Coach Smotherman to wear blue jerseys during practice, while the remaining football players wore white jerseys.[9]  He alleges that when he was in the ninth grade, Coach Jacobs saw him wearing a camouflage jacket and commented that he had never seen a black kid wearing camouflage.[10]

On November 18, 2010, another student allegedly slapped Mason and called him a "nappy headed nigger" after Mason said that he did not appreciate the boy's racist jokes; a fight ensued.[11]  On February 28, 2011, a student made a racial comment to Mason, and later that day, the same student hit Mason in the back of the neck while Mason was already wearing a neck

---

[5]Doc. No. 16, Ex. B.

[6]Plaintiff Tonia Matthias, Mason Jones's mother, is Caucasian.  Mason's biological father is African American.  Doc. No. 1.

[7]Doc. Nos. 12, 16.

[8]Doc. No. 16 -- Mason Jones deposition at 23.  Mason also recounts a sleepover at another boy's house, during which he was allegedly racially harassed.  *Id*. at 27-28.  There is no evidence that the sleep-over was school-related, or that the harassment was ever reported to the appropriate school authorities.

[9]*Id*.

[10]*Id*. at 8-9. In response to this alleged comment, Mason shook his head and walked away.

[11]*Id*. at 8.

brace in connection with a different injury; the two boys then fought.[12]  After that incident, Mason and Plaintiff contend that Coach Calley told them that Mason "was going to have to get thicker skin and quit wearing his feelings on his shoulder and not worry about pulling the race card every time somebody says something to him."[13]

During art class on June 3, 2011, a white student approached Mason with a pair of scissors and cut Mason's throat from ear to ear.  Afterwards, the white student was allegedly overheard by another student to have said "I cut a nigger."[14]  In addition to these incidents, Mason's deposition testimony reveals that he heard racial epithets from students on a daily basis, and although he reported the incidents to teachers when a teacher was nearby, no steps were taken to remedy the situation.[15]  As discussed in more detail below, there is evidence in the record that Defendants were aware of some of these incidents, but the record reflects that most of the alleged harassment was not reported to an appropriate authority.

Plaintiff sued Defendants under the following causes of action: 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 2000d (Title VI of the Civil Rights Act of 1964); Ark. Code Ann. § 16-123-101 (the Arkansas Civil Rights Act); and the Fourteenth Amendment to the United States Constitution.[16]  Plaintiff asserts that Mason was subjected to a hostile educational

---

[12]*Id*. at 19; Doc. No. 16. Exs. E, F, and G.

[13]Doc. No. 16 -- Tonia Matthias deposition at 42.

[14]Doc. No. 16. Mason Jones deposition at 11-12, 17.  Further, Mason did not hear the racial slur and there is no statement in the record from the other student who Mason thinks heard the slur.

[15]*Id*. at 22.

[16]Doc. No. 1.

environment and alleges disparate impact.[17]  Defendants disagree, and ask that summary judgment be entered in their favor.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[18]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[19]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[20]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[21]  I must view the facts in the light most favorable to the party opposing the motion.[22]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record

---

[17]*Id.*

[18]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[19]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[20]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[21]*Id.* at 728.

[22]*Id.* at 727-28.

in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[23]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[24]

### III.     DISCUSSION

#### A.     Title VI of the Civil Rights Act of 1964

Section 601 of Title VI of the Civil Rights Act of 1964 reads, in relevant part: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[25]  In short, Title VI forbids intentional discrimination in the administration of federal funded programs, including in schools.[26] Harassment can rise to the level of discrimination under Title VI if a school district is "deliberately indifferent to . . . harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."[27]  Deliberate indifference can

---

[23]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[24]*Anderson*, 477 U.S. at 248.

[25]42 U.S.C. § 2000d.  Defendants cannot be held liable in their individual capacity under Title VI.  *Whitfield v. Notre Dame Middle Sch.*, 412 Fed. Appx. 517, 521 (3d Cir. 2011); *Price v. La. Dep't of Educ.*, 329 Fed. Appx. 559, 561 (5th Cir. 2009); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 n.7 (9th Cir. 2004); *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 (11th Cir. 2003).

[26]*Alexander v. Sandoval*, 532 U.S. 275 (2001).

[27]*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999).  While *Davis* applied Title IX of the Civil Rights Act of 1964, the United States Supreme Court has noted that Title IX

be found when a school district had actual knowledge of student-on-student harassment and the school district's reaction was clearly unreasonable.[28]

To satisfy the actual knowledge element in a hostile educational environment claim, the plaintiff must show that an "appropriate person" knew of the alleged discrimination.[29] An appropriate person is one "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf."[30] The Court of Appeals for the Eighth Circuit recognized that school principals are appropriate persons for Title VI purposes.[31] Teachers, however, are not presumed to be appropriate persons.[32]

For a Title VI claim to succeed, the plaintiff must establish that the harassment deprived the victim of educational opportunities. Some examples of deprivation to access of educational opportunities "may include dropping grades, becoming homebound or hospitalized due to harassment, or physical violence."[33] Whether conduct rises to the level of harassment for Title

---

was modeled after Title VI, and that the two should be applied similarly. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246 (2009). See also *Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 934 (10th Cir. 2003) (setting out elements of student-on-student racial harassment under Title VI).

[28] *Davis*, 526 U.S. at 649-50 (internal citations omitted).

[29] *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 456 (8th Cir. 2009) (internal citations omitted); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).

[30] *Id*. (quoting *P.H. v. Sch. Dist. Of Kan. City, Mo.,* 265 F.3d 653, 661 (8th Cir. 2001); *Davis,* 526 U.S. at 641-43.

[31] See *Plamp*, 565 F.3d at 457.

[32] *Id*. ("[W]hile we do not hold that school guidance counselors and teachers are always without the authority necessary to institute corrective measures or lack sufficient control to take remedial action, the record in this case does not support a finding that . . . the Mitchell High School teachers were 'appropriate persons' within the meaning of the statute.").

[33] *Gabrielle M. v. Park Fores-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 823 (7th Cir. 2003).

VI purposes "depends on a constellation of surrounding circumstances, expectations, and relationships, . . . including the ages of the harasser and the victim and the number of individuals involved . . . ."[34]

Mason stated that he heard racial slurs almost on an daily basis, and that he reported the conduct to a teacher if one was nearby.[35] Plaintiff neither identified the teachers to whom the harassment was reported, nor offered evidence to support a conclusion that the teachers were a person of authority. It is also appears that neither Mason nor Plaintiff reported to an appropriate person the following alleged incidents: when African American football players were forced to wear blue jerseys; when Coach Grady allegedly told Mason to keep his "cotton picking hands" out of a bag of fries; and when Coach Calley told Mason that he needed to have thicker skin. The Court of Appeals for the Eighth Circuit has pointed out that the plaintiff has the burden to establish a prima facie case; it is Plaintiff's burden to show that the alleged harassment was reported to an appropriate person.[36] Incidents that were not reported to an appropriate person cannot be considered in connection with Plaintiff's hostile educational environment claim.

Plaintiff's testimony reveals that she spoke with the following people about the following incidents involving Mason: Coach Paul Calley -- February 28, 2011 fight; Principal Scott Curtis -- February 28, 2011 fight; and Superintendent Randy Rutherford -- the scissors incident;[37] Curtis and Rutherford are appropriate persons for Title VI purposes. Plaintiff's deposition testimony in connection with the scissors incident shows that Plaintiff talked to Rutherford the day after

---

[34]*Davis*, 526 U.S. at 651 (internal citations omitted).

[35]Doc. No. 16 -- Mason Jones deposition at 20-22.

[36]*Plamp*, 565 F.3d at 458 n.2.

[37]Doc. No. 16 -- Deposition of Tonia Matthias at 42, 51, 52.

Mason was hurt.[38]  Plaintiff said that she then had a lengthy conversation with Rutherford roughly 48 hours later about what had happened and how the incident was handled.[39]

Defendants contend that they were made aware of three incidents involving Mason -- the November, 2010 fight; the February, 2011 fight; and the June, 2011 scissor incident -- *sans* the racial remark.  Regardless of whether the racial remark in connection with the incident with the scissors was made or reported, the fact that Mason was in a distinct racial minority at the school is enough to create a question of fact as to whether the incident was race related.  Defendants rely on a police report regarding the incident that provides that Mason and the other student involved in the scissors incident were horse playing with the scissors and Mason put the scissors to the other boy's throat first.  But Mason denies that account of the event.  The fights and scissor incident are severe and pervasive, and Defendants had notice of them.

The record is inconclusive as to whether Defendants were clearly unreasonable in how they reacted to the harassment.  While it is clear that all students involved in the fights were suspended -- Mason included -- it is not clear how, if at all, Defendants investigated the allegations of racial slurs, or whether Defendants punished students specifically in connection with the harassment, regardless of the fights.  Apparently the student who cut Mason's throat was suspended for five days and referred to the District's Alternative Learning Environment program, which is housed in a separate facility.[40]  But the District does not reveal whether it took any steps to address the racial harassment, or if the punishment was a result of the physical act alone.

---

[38]*Id*. at 44.

[39]*Id*. at 45.

[40]Doc. No. 10, Ex. A.

There are genuine issues of material fact in connection with how Defendants handled the harassment.

There are also genuine issues of material fact as to whether the harassment deprived Mason of access to educational opportunities or benefits. Defendants point out that Mason has excelled academically at school.[41] But dropping grades are not the only example of negative impact; "being diagnosed with behavioral and/or anxiety disorders" may also be evidence of negative impact;[42] the fighting is also a factor. And Mason testified that he has been diagnosed with post traumatic stress disorder, and that he is taking medication to treat that and his severe anxiety.[43]

Because there are genuine issues of material fact at issue, summary judgment on Plaintiff's Title VI claim is not appropriate.[44]

### B.     42 U.S.C. §§ 1981 and 1983,[45] and the Arkansas Civil Rights Act

To succeed on a claim under 42 U.S.C. § 1981, a plaintiff must establish that he is a member of a racial minority against whom the defendant intentionally discriminated in one of the activities set out by § 1981, including the "right to full and equal benefit of all laws and

---

[41] *Id*.

[42] *Roe v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1028 (E.D. Cal. 2009) (citing *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 968 (D. Kan. 2005)).

[43] Doc. No. 16 -- Mason Jones deposition at 16.

[44] While Plaintiff filed her Complaint individually and on Mason's behalf, the Complaint focuses on Mason. It appears that Plaintiff would not have standing to bring a Title VI claim on her own behalf, because she is not the beneficiary of a federally-funded program. See *Rodriguez v. Boursiquot*, No. 09-CV-802, 2010 U.S. Dist. Lexis 25090 (S.D.N.Y. Mar. 17, 2010).

[45] Section 1983 does not create substantive rights, but provides a remedy for the violation of rights that were created by federal law.

proceedings for the security or persons and property."[46]  Plaintiff brings the hostile educational environment claim under § 1981 and the Arkansas Civil Rights Act, as well as under Title VI.

Summary judgment is inappropriate on these claims for the same reasons as set out above.

### C.  42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment

The equal protection clause of the Fourteenth Amendment prohibits treating similarly situated individuals differently on the basis of race.[47]  To succeed on a § 1983 claim against a school district, a plaintiff must show that his injury resulted from an official policy or custom of the school district.[48]

In connection with Plaintiff's hostile educational environment claim, summary judgment is inappropriate for the reasons set out above.

To the extent that Plaintiff alleges disparate impact, Plaintiff's claim fails.  As explained by the Court of Appeals for the Tenth Circuit: "In disparate impact cases, there is no intent to act or not to act at all.  Disparate impact cases usually deal with facially neutral policies and procedures that, when applied, have an unintentional discriminatory effect on certain individuals based on their race, color, or national origin."[49]  Plaintiff has not provided evidence of such a policy or effect.  Because the evidence does not support a *prima facie* finding of disparate treatment, that claim fails.

---

[46]42 U.S.C. § 1981(a).

[47]*McDonald v. City of St. Paul*, 679 F.3d 698, 705 (8th Cir. 2012).

[48]*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-92 (1978).

[49]*Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 932 (10th Cir. 2003).

**D.     Qualified Immunity**

To impose liability on a state-actor defendant in his individual capacity, it must be shown that he participated in or approved of an alleged violation of constitutional rights.[50]  Yet qualified immunity may shield the state actor from individual liability "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known."[51]  In determining if qualified immunity applies, courts make the following inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of defendant's alleged misconduct."[52]  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it was be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted."[53]

It appears that Defendants Rutherford, Porter, Sanders, Wishard, Moore, and Hart participated in or approved of at least one incident involving Mason -- they decided the reprimand for the child who cut Mason's throat.  The child was a special education student,[54] and, as such, the Plaintiff contends that the School Board decided how to remedy the situation.[55]  The child was apparently suspended, and moved into a different program housed in a separate

---

[50]*C. N. v. Ridgwood Bd. of Educ.*, 430 F.3d 159, 173-74 (3d Cir. 2005).

[51]*Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009).

[52]*Id.* at 496.

[53]*Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[54]Doc. No. 10, Ex. A.

[55]Doc. No. 16 -- Tonia Matthias deposition at 45.

facility.[56]  Even if there was a constitutional violation, it would not be clear to a reasonable person that this action was unlawful.  Qualified immunity applies and individual-capacity claims against these Defendants fail.[57]

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. No. 10) is: DENIED as to Plaintiff's hostile educational environment claim; GRANTED as to Plaintiff's disparate impact claim; and GRANTED as to Plaintiff's individual capacity claims, as qualified immunity applies.

IT IS SO ORDERED this 31st day of October, 2012.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[56] Doc. No. 10, Ex. A.

[57] See *Doe v. Flaherty*, 623 F.3d 577 (8th Cir. 2010).